JOHN POWERS, ET AL *v.* JAMES COMEY'S ADMX.

[Abstract Kentucky Law Reporter, Vol. 7—522.]

**Recovery of Wife's Interest in Land.**

Where the wife furnishes money to her husband to be used in paying for land, and the title is taken in the husband's name, and the wife sets up a claim to a part of the land, she can recover neither the money nor land when the evidence shows that after the purchase of said land she and her husband conveyed one-half interest therein to her son, who is a stepson of her husband, it fairly appearing that the one-half interest was about worth what money the wife furnished her husband.

APPEAL FROM FRANKLIN CIRCUIT COURT.

January 28, 1886.

OPINION BY JUDGE LEWIS:

In the petition of Mary Comey, called a petition in her own right, which was filed some time after the commencement of the action by her as administratrix of James Comey, her deceased husband, for the settlement of the estate, she sets up claim to and seeks judgment for a portion of the land left by him, also claiming both a dower and homestead right in the same land.

57

The land was conveyed to her husband by London Thomas by deed executed April 6, 1868, and she bases her right to a portion of it upon the following alleged state of facts. She says that she and James Comey were married some time before the purchase of the land, and that she held in her own right and as her separate estate $1,400 in money which he never reduced to his possession nor asserted claim to, and that at his instance she furnished to him the money to aid in paying for the land under a distinct agreement between them that to the extent said sum contributed towards the purchase he was to cause a conveyance to be made in her own name; that under that agreement he received the money and paid it on the purchase, but in violation of and without her knowledge or consent took the conveyance of the entire tract in his own name; that some time thereafter she discovered the deed had been so made, and he in compliance with her demand repeatedly promised to carry out the agreement. She therefore asks that she be adjudged the owner in fee and awarded the possession of her ratable share of the land, which would be about fifty-nine acres.

The lower court adjudged that she was not entitled to a conveyance of any part of the land, but that she was entitled to $1,400 advanced and loaned by her to James Comey, deceased, to be paid out of the proceeds of the land, which was directed to be sold, and was also entitled to a homestead in the land during her life. There is no written evidence of the alleged agreement, nor any other except the statements of witnesses as to loose declarations made by the deceased to them, the precise date of which none of them pretend to give. One of these witnesses is her son and stepson of the deceased, named McConliff, who himself set up a claim of about $1,500 against the estate for money loaned to pay for the same land, but which the lower court disallowed, and one of them is her son-in-law.

It appears that the land, containing about one hundred twenty acres, was conveyed by London Thomas to James Comey April 6, 1868, about twelve years previous to his death, the consideration being $2,820, all of which is acknowledged in the deed to be cash in hand paid except $40. But McConliff states the land was purchased two or three years before the deed was made, and was not fully paid for at the date of the purchase. If this be true, the right of Mary Comey to recover this large sum, which she does

not even pray for nor file any account for before the commis-
sioner must rest on an alleged agreement made more than twelve
years before the death of James Comey, and proved by the oral
testimony of these witnesses, two of them being of near kin to
Mary Comey.

It appears that May 18, 1871, James Comey and Mary Comey
executed a· deed to the same William McConliff who is a witness
in this case for an undivided interest of one-half in the same tract
of land, the consideration thereof expressed in the deed being the
sum of $1 in hand paid and the further consideration of the wish
and desire of the said parties, grantors, to settle upon the said
McConliff, stepson to the first and son to the second of the parties
of the first part, and it being the intention of said parties of the
first part that one-half of the whole estate should finally descend
to said William McConliff. We are satisfied that, conceding James
Comey did use the $1,400 of his wife's money in paying for the
land, and did make the alleged agreement with her, his gift of
one-half the land to her son satisfies and discharges whatever obli-
gation ever existed in virtue of that undertaking.

William McConliff, however, undertakes as a witness to destroy
the effect of that act of the parties by testifying that he advanced
and loaned to James Comey about $1,500 of the money used in
paying Thomas for the land. But his testimony, though James
Comey be not alive to contradict or explain himself, is not to be
believed for two reasons. In the first place the recitals of the deed
to him, made three years after Thomas conveyed to Comey, show
the undivided half of the land was given to him, and he paid no
consideration therefor whatever. In the second place he says the
$1,500 which he claimed to have advanced was accumulated by him
in business. He states in his deposition taken June 1, 1881, that
he was then thirty-three years of age, and he was therefore in 1868,
when Thomas conveyed to Comey, under twenty years of age and
still younger when according to his testimony the land was first
purchased and the first payments were made. .

In our opinion neither the law nor the evidence in this case au-
thorized a judgment in favor of Mrs. Comey for the $1,400 or any
part of it, and the court erred in allowing it. Wherefore the judg-
ment is reversed and cause remanded for proceedings consistent
with this opinion.

Judgment *reversed.*
*Ira Julian, for appellants.*
*Geo. C. Drane, for appellee.*

